UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

    v.                                                          Case No. 22-CR-30

CHAD M. SCHAMPERS,
NATHANIEL R. SMITH,
GINA L. SCHAMPERS, and
JEFFREY M. O'BRIEN,

    Defendants.

## ORDER SCHEDULING EVIDENTIARY HEARING AND ORAL ARGUMENT AS TO STANDING ON DEFENDANTS' MOTIONS TO SUPPRESS

On February 1, 2022, a grand jury sitting in the Eastern District of Wisconsin returned a ten-count indictment against Chad M. Schampers, Nathaniel R. Smith, Gina L. Schampers, and Jeffery M. O'Brien ("defendants"). (Docket # 1.) Defendants are charged in Count One of the indictment with conspiracy to commit wire and bank fraud and Counts Two through Ten with wire fraud. The defendants have entered pleas of not guilty. This case has been designated as complex, and a jury trial before the Honorable William C. Griesbach is scheduled for May of 2023.

The defendants have filed motions to suppress and request a *Franks* hearing. (Docket # 49, 55, 57, and 62.) The government has responded in opposition. (U.S.'s Consolidated Resp. to Defs.' Motions, Docket # 68.) The motion to suppress is based on a June 26, 2019 federal search warrant to search the premises of Summit Contracting, Inc. ("Summit"), a home improvement service located in De Pere, Wisconsin that operated from late 2018

through early 2020. (Def. Nathaniel R. Smith's Mem. in Supp. of Mot. to Suppress, Docket # 52 at 3.) Summit was founded by Chad M. Schampers and Nathaniel R. Smith and provided roof repairs, window installation, and various other home improvement services throughout eastern Wisconsin. (*Id.*)

Defendants argue that the evidence derived from the search should be suppressed because the search warrant lacks probable cause on its face. (*Id.* at 1–3.) Defendants further argue that the warrant accusing Summit and its principals of bank and wire fraud "fails to allege that Summit, its owners, or its employees deceived customers or financial institutions." (*Id.* at 2.) Further, Agent Deamron's supporting affidavit "fails to allege who committed fraud, how, when, and why" and "relies on two confidential witnesses—neither credible." (*Id.*) Finally, if the Court determines that the warrant was supported by probable cause, then defendants request a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), "to evaluate material omissions about witness credibility in the search warrant affidavit." (*Id.* at 3.)

The government argues that "each defendant lacks standing to seek suppression of the evidence because ownership or participation in a business alone is not sufficient to establish a reasonable expectation of privacy in the business's office space or records." (U.S.'s Consolidated Resp. to Defs.' Motions, Docket # 68 at 1.) Moreover, it argues that the affidavit described a "straightforward fraud with sufficient detail to provide the magistrate enough evidence to conclude that probable cause existed for a search warrant," and Agent Deamron, the affiant, "provided all the relevant information she had as it related to the witnesses on whom the affidavit relied." (*Id.* at 2.) Therefore, the government argues, there is "no basis upon which to suppress the evidence and no reason to require a F*ranks* hearing." (*Id.*)

I begin, as I must, with the issue of standing. The Fourth Amendment protects citizens from unreasonable searches and seizures. To determine whether an unreasonable search occurred, a court must consider whether a trespass by law enforcement, occurred, or whether an individual's reasonable expectation of privacy was violated by law enforcement. *United States v. Jones*, 565 U.S. 400, 408-409 (2012). While the government bears the burden of justifying a warrantless search, a defendant objecting to a search bears the burden of showing a legitimate expectation of privacy in the area searched. *United States v. Villegas*, 495 F.3d 761, 767 (7th Cir. 2007). A court assesses a defendant's legitimate expectation of privacy, or standing to object to a search, by considering "(1) whether the individual, by his conduct, has exhibited an actual (subjective) expectation of privacy; and (2) whether the individual's subjective expectation of privacy is one that society is prepared to recognize as reasonable." *United States v. Carlisle*, 614 F.3d 750, 756–57 (7th Cir. 2010).

The Supreme Court has held that "one has standing to object to a search of his office, as well as of his home." *Mancusi v. DeForte*, 392 U.S. 364, 369 (1968). This holding, however, does not establish that merely being an owner or officer of a business gives a person standing to challenge the search of the entire business. In their briefing, the parties do not contest that the leading cases on this issue come from other circuits. The Ninth Circuit has held that "except in the case of a small business over which an individual exercises daily management and control, an individual challenging a search of workplace areas beyond his own internal office must generally show some personal connection to the places searched and the materials seized." *United States v. SDI Future Health, Inc.*, 568 F.3d 684, 698 (9th Cir. 2009) (comparing to *United States v. Gonzalez, Inc.*, 412 F.3d 1102, 1116–17 (9th Cir. 2005), in which the court found that owners of "a small-family run business housing only 25 employees at its peak" had

"a reasonable expectation of privacy over the on-site business conversations between their agents"). The *SDI Future Health, Inc.* court further found that:

> [A]lthough all the circumstances remain relevant, we will specifically determine the strength of such personal connection with reference to the following factors: (1) whether the item seized is personal property or otherwise kept in a private place separate from other work-related material; (2) whether the defendant had custody or immediate control of the item when officers seized it; and (3) whether the defendant took precautions on his own behalf to secure the place searched or things seized from any interference without his authorization.

*Id.* The Second Circuit has held that "[t]he question whether a corporate officer has a reasonable expectation of privacy to challenge a search of business premises focuses principally on whether he has made a sufficient showing of a possessory or proprietary interest in the area searched," which requires "a sufficient 'nexus between the area searched and [his own] work space'"—something that "necessarily must be determined on a case-by-case basis." *United States v. Chang*, 897 F.2d 646, 649–50 (2d Cir. 1990) (citations omitted).

Other courts have similarly found that individuals were not entitled to Fourth Amendment standing to contest searches of their businesses solely because of their status as owners or shareholders; more was required. *See, e.g., United States v. Mohney*, 949 F.2d 1397, 1404 (6th Cir. 1991) (finding that the defendant did not have standing to contest search of corporation he owned because items uncovered were "documents he claimed to be completely uninvolved in preparing and which were kept in offices he claimed to rarely visit"); *Williams v. Kunze*, 806 F.2d 594, 600 (5th Cir. 1986) (finding that the vice president and president/sole shareholder had no reasonable expectation of privacy in corporate records kept in "common file room").

In this case, neither the indictment nor the affidavit in support of the search warrant describe the respective roles or responsibilities of the defendants at Summit. Additionally,

4

Case 1:22-cr-00030-WCG-NJ   Filed 12/09/22   Page 4 of 6   Document 76

other than describing the physical structure of the Summit office building, the warrant provides no other details about the Summit office. However, the burden is on the defendants to show standing to challenge the warrant and resulting search. As to Chad M. Schampers, he is the co-founder and majority owner of Summit and the husband of Gina Schampers. Other than these two facts, the record is silent as to Chad Schampers' role at Summit or his expectation of privacy in the premises searched. The record contains even less information about Jeffrey O'Brien.

Nat Smith and Gina Schampers fare better. Nat Smith argues that he owned thirty percent of Summit. He further argues that Summit is a small business because it never had more than forty or fifty employees. He argues that he managed the "backend operations" and worked out of Summit's headquarters daily.

Gina Schampers submits that she has standing because her husband, Chad Schampers, had majority ownership of Summit and that she was a full-time employee of Summit. She submits that she had her own office and had her own computer that was password protected. (Def. Gina L. Schampers' Reply to Gov.'s Resp. to Def.'s Mot. to Suppress Evidence, Docket # 70.)

On this sparse record, I cannot determine whether the defendants have a reasonable expectation of privacy in the areas searched and the items seized. For example, other than a representation from the defendants that agents seized around 25,000 pages of corporate records, the record is silent as to where at Summit these records were seized from. As the cases cited above illustrate, whether any of the defendants have standing to challenge the search of the Summit premises and the seizure of these 25,000 pages of Summit's records is determined on a case-by-case basis. Accordingly, to properly address the factors outlined in

*SDI Future Health Inc.*, *Gonzalez*, and the other cases cited above, I will conduct an evidentiary hearing to fully develop the record on this issue. Again, the defendants have the burden to demonstrate standing. I will schedule a conference with the parties to schedule the evidentiary hearing and oral argument following the hearing.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the clerk's office will contact the parties to schedule a conference for scheduling the evidentiary hearing and oral argument on standing.

Dated at Milwaukee, Wisconsin this 9th day of December, 2022.

BY THE COURT

NANCY JOSEPH
United States Magistrate Judge