UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

    Plaintiff,

    v.                                                Case No. 22-CR-30

CHAD M. SCHAMPERS,
NATHANIEL R. SMITH,
GINA L. SCHAMPERS, and
JEFFREY M. O'BRIEN,

    Defendants.

---

## REPORT AND RECOMMENDATION ON DEFENDANTS' MOTIONS TO DISMISS THE INDICTMENT AND ORDER ON DEFENDANTS' MOTIONS FOR A BILL OF PARTICULARS AND FOR A *SANTIAGO* PROFFER

---

       A grand jury sitting in the Eastern District of Wisconsin returned a ten-count indictment against Chad M. Schampers, Nathaniel R. Smith, Gina L. Schampers, and Jeffery M. O'Brien ("defendants"). (Docket # 1.) Defendants are charged with conspiracy to commit wire and bank fraud in Count One of the indictment and with individual instances of wire fraud in Counts Two through Ten. The defendants have entered pleas of not guilty. This case has been designated as complex, with the final pretrial conference set for April 7, 2023 and a jury trial set for May 8, 2023 before the Honorable William C. Griesbach.

       Defendants have filed several pretrial motions. The government has responded in opposition to all the defendants' motions with the exception of the motions for a bill of particulars. (Pl.'s Consolidated Resp. to Defs.' Motions, Docket # 68.) Here, I address defendants' motions to dismiss the indictment (Docket # 53, 59, 61, and 64), motions for a bill of particulars (Docket # 46, 58, 60, and 63), and motions for a *Santiago* proffer (Docket #

56 and 65). For the reasons explained below, I recommend that defendants' motions to dismiss the indictment be denied. Furthermore, I order that defendants' motions for a bill of particulars are granted and that defendants' motions for a *Santiago* proffer be deferred to Judge Griesbach.

1. *Motions to Dismiss Indictment*

Defendants move under Fed. R. Crim. P. 12(b) to dismiss the indictment for failure to state the elements of the charged offenses. In Count One of the indictment, the defendants are charged with conspiracy to commit wire and bank fraud, and in Counts Two through Ten, defendants are charged with specific instances of wire fraud. (Docket # 1.)

## ALLEGATIONS IN THE INDICTMENT

The indictment alleges the following facts common to all charges:

### Purpose, Manner & Means of the Conspiracy

3. The purpose of the conspiracy was to carry out a scheme to defraud and obtain money from home improvement customers using materially false and fraudulent pretenses, representations, and concealments, essentially as follows:

    a. Chad M. Schampers, Nathaniel R. Smith, Gina L. Schampers, Jeffrey O'Brien, and others working at their direction sought out home improvement customer leads via television advertisements, promotional booths at local sporting events, home improvement shows, and internet-based advertisements.

    b. Chad M. Schampers, Nathaniel R. Smith, Gina L. Schampers, Jeffrey O'Brien, and others working at their direction scheduled sales appointments in prospective customers' home. Sales representatives, working at the direction of the defendants, utilized high pressure, deceptive tactics, and false statements to induce prospective customers to retain Summit for their home improvement project.

c. The defendants and others working at their direction pressured prospective customers to finance their projects with Summit, using Summit's chosen financial institutions, EnerBank and GreenSky.

d. At the defendants' direction, Summit sales representatives induced customers to apply for financing by misrepresenting the terms of the financing being offered.

e. Summit sales representatives utilized electronic devices and tablets to immediately process, at the sales meeting, via the interstate wires, financing applications with EnerBank and GreenSky, and encouraged applicants to misrepresent their annual income to ensure approval of the loan.

f. Contrary to the terms of the agreements between Summit, Enerbank, GreenSky, and the customers, Chad M. Schampers, Nathaniel R. Smith, Gina L. Schampers, and others withdrew funds from customer's financing accounts prior to beginning any work and ordering the necessary building materials.

g. Summit sales representatives repeatedly misled customers and prospective customers as to the nature of the paperwork they were signing. At times, customers were fraudulently induced into signing paperwork acknowledging that Summit's work on a project was completed within hours after the sales representative met the customer for the initial sales pitch.

h. Summit sales representatives falsely told customers and potential customers that Summit did not use subcontractors when, in fact, a majority of Summit's work was performed by subcontractors.

4. As a result of the defendants' actions, they wrongfully obtained and attempted to obtain more than $1,500,000.

(Indictment, Docket # 1.) As to the wire fraud counts, defendants argue that the indictment fails to allege an intent to defraud. (Docket # 54 at 5–13.) As to the bank fraud counts, defendants argue that the indictment fails to allege that the defendants made material statements to a "financial institution" as defined by the statute and fails to allege that

defendants used a false pretense, representation, or promise to execute the bank fraud scheme. (*Id.* at 13–17.) I will address each argument in turn.

## ANALYSIS

### 1. Applicable Law

The minimal requirements for a valid indictment are grounded in the constitutional mandates of the Fifth and Sixth Amendments. The Fifth Amendment guarantees the right to an indictment by grand jury and serves as a bar to double jeopardy, while the Sixth Amendment guarantees that a defendant be informed of the charges against him. *United States v. Hinkle*, 637 F.2d 1154, 1157 (7th Cir. 1981). These constitutional mandates establish three minimum requirements for an indictment. First, it must adequately state all of the elements of the crime charged; second, it must inform the defendant of the nature of the charges so that he may prepare a defense; and finally, the indictment must allow the defendant to plead the judgment as a bar to any future prosecution for the same offense. *United States v. Smith*, 230 F.3d 300, 305 (7th Cir. 2000).

Consistent with the constitutional requirements, Fed. R. Crim. P. 7(c)(1) requires an indictment to be "a plain, concise, and definite written statement of the essential facts constituting the offense charged." An indictment is sufficient if it: (1) states the elements of the offense charged; (2) fairly informs the defendant of the nature of the charge so that he may prepare a defense; and (3) enables him to plead an acquittal or conviction as a bar against future prosecutions for the same offense. *See United States v. Vaughn*, 722 F.3d 918, 925 (7th Cir. 2010); *United States v. White*, 610 F.3d 956, 958 (7th Cir. 2010). Once the elements of the crime have been specified, an indictment need only provide enough factual information to enable a defendant to identify the conduct on which the government intends to base its case.

*United States v. Fassnacht*, 332 F.3d 440, 446 (7th Cir. 2003). "The defendant's constitutional right is to know the offense with which he is charged, not to know the details of how it will be proved." *Id.* (internal citation omitted). The indictment need not "exhaustively recount the facts surrounding the crime's commission." *United States v. Agostino*, 132 F.3d 1183, 1189, 1191 (7th Cir. 1997). Rather, simply tracking the language of the charging statute will generally suffice. *White*, 610 F.3d at 958–59.

On a pretrial motion to dismiss, an indictment "is reviewed on its face, regardless of the strength or weakness of the government's case." *Id.* at 958. A defendant may not, via pretrial motion, challenge the sufficiency of the government's proof. *See United States v. Yasak*, 884 F.2d 996, 1001 (7th Cir. 1989) ("A motion to dismiss is not intended to be a 'summary trial of the evidence.'"). The court dismisses an indictment only if the government's inability to prove its case appears convincingly on the face of the indictment. *United States v. Castor*, 558 F.2d 379, 384 (7th Cir. 1977).

  2. *Application to this Case*

    2.1 Charges of Wire Fraud

Again, defendants are charged in Count One with conspiracy to commit wire fraud and in Counts Two through Ten with wire fraud. (Docket # 1.) "The wire fraud statute, 18 U.S.C. § 1343, criminalizes the use of wire, radio, or television communications to effect 'any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses . . . .'" *United States v. Chanu*, 40 F.4th 528, 539 (7th Cir. 2022). To convict on wire fraud, the government must prove three elements: "(1) the defendant participated in a scheme to defraud; (2) the defendant intended to defraud; and (3) a use of an interstate wire in furtherance of the fraudulent scheme." *Id.* (quoting *United States v. Powell*, 576 F.3d 482,

490 (7th Cir. 2009)). "A scheme to defraud requires the making of a false statement or material misrepresentation, or the concealment of [a] material fact." *United States v. Powell,* 576 F.3d 482, 490 (7th Cir. 2009) (quotations and citations omitted). "[I]ntent to defraud requires a wil[l]ful act by the defendant with the specific intent to deceive or cheat, usually for the purpose of getting financial gain for one's self or causing financial loss to another." *United States v. Sheneman*, 682 F.3d 623, 629 (7th Cir. 2012) (quotation and citation omitted).

The crux of defendants' argument is that the charges against them are a "state consumer protection case masquerading as a prosecution for conspiracy to commit federal wire and bank fraud." (Docket # 54 at 1.) Defendants argue that the indictment alleges "chicanery and contractual breaches," not an intent to defraud. (*Id.* at 2.) But defendants' argument hinges on the incorrect premise that the indictment fails to allege that defendants deprived their customers of either money or property. They argue that the indictment "never challenges that Summit's customers received what they paid for." (*Id.* at 8, 12.) Defendants cite the Seventh Circuit's decision in *United States v. Kelerchian*, 937 F.3d 895 (7th Cir. 2019) for support. (*Id.* at 7.)

*Kelerchian*, however, is inapposite. In *Kelerchian*, the court was faced with the argument that the government could not prove intent to defraud if "the fraudsters deliver the agreed money, goods, or services." 937 F.3d at 913. In rejecting this argument, the court noted the "fine line" between schemes that "do no more than cause the victims to enter into transactions they would otherwise avoid—which do not violate the mail or wire fraud statutes—and schemes that depend for their completion on a misrepresentation of an essential element of the bargain—which do violate the mail and wire fraud statutes." *Id.* at 912 (citing *United States*

*v. Binday*, 804 F.3d 558, 570 (2d Cir. 2015) (quoting *United States v. Shellef*, 507 F.3d 82, 108 (2d Cir. 2007))).

To illustrate this distinction, consider the example given by the Eleventh Circuit in *United States v. Takhalov*, 827 F.3d 1307 (11th Cir. 2016). The court explained that the phrase "scheme to defraud," as used in the wire fraud statute, "refers only to those schemes in which a defendant lies about the nature of the bargain itself." *Id.* at 1313. The court compared a situation in which a defendant lies about the price of a good (e.g., by promising the good costs $10 when it really costs $20) and a situation in which the defendant lies by saying he is the long-lost cousin of the prospective buyer to induce the sale. *Id.* at 1313–14. The court reasoned that while the defendant has committed wire fraud in the first case because he lied about the nature of the bargain, he cannot be convicted of wire fraud in the second case because he has not lied about the nature of the bargain. *Id.* at 1314.

Here, defendants suggest that the indictment falls into the "long-lost cousin" example. They argue that the indictment fails to allege that defendants lied about the nature of the bargain; the customers ultimately received what they paid for. (Docket # 54 at 8, 11–12.) I disagree. Again, wire fraud consists of a defendant (1) engaging in a scheme to defraud, (2) with the intent to defraud, and (3) the use of an interstate wire in furtherance of the scheme to defraud. As the Seventh Circuit has explained, wire fraud requires the making of a false statement with the intent to deceive or cheat, usually for the purpose of one's own financial gain. *Powell*, 576 F.3d at 490; *Sheneman*, 682 F.3d at 629. And the indictment in this case alleges the following intentional "scheme to defraud": Defendants used false statements to induce customers into using Summit for their home improvement projects, pressured the customers into financing their projects through Summit's chosen financers, encouraged the

7

Case 1:22-cr-00030-WCG     Filed 02/01/23     Page 7 of 14     Document 80

customers to lie to the financers about their financial situation in order to secure the funds, and then withdrew the funds without completing the projects. In other words, the government alleges that the defendants intentionally used false statements to obtain the customers' payments without giving the customers what they bargained for, i.e., the completed projects. (*See* Indictment ¶¶ 3, 5.) Through this scheme, defendants allegedly wrongfully obtained more than $1.5 million and used interstate wire to do so. (*Id.* ¶¶ 4–5.) Additionally, as to each substantive count of wire fraud, the indictment alleges that for the purpose of executing the scheme, the defendants, with the intent to defraud, knowingly caused to be transmitted in interstate commerce wire communications related to the recruitment of customers, financing of home improvement loans, and receiving payment of uncompleted and partially completed projects. (*Id.* ¶ 5.) On these facts, this indictment sufficiently alleges defendants engaged in a scheme to defraud, with the intent to defraud, and used interstate wire in furtherance of the scheme. As such, I recommend defendants' motion to dismiss the wire fraud counts be denied.

### 2.2 Charges of Bank Fraud

Defendants are charged in Count One with conspiracy to commit bank fraud in violation of 18 U.S.C. § 1344. To convict a defendant of bank fraud under 18 U.S.C. § 1344, the government must prove: "(1) there was a scheme to defraud a [financial institution]; (2) [defendant] knowingly executed or attempted to execute the scheme; (3) [defendant] acted with the intent to defraud; (4) the scheme involved a materially false or fraudulent pretense, representation, or promise; and (5) at the time of the charged offense the bank's deposits were insured by the [FDIC]." *United States v. Palladinetti*, 16 F.4th 545, 549 (7th Cir. 2021) (citing *United States v. Friedman*, 971 F.3d 700, 712–13 (7th Cir. 2020)).

Defendants argue the indictment contains two primary defects: (1) it fails to allege that defendants made material statements to a "financial institution" as defined by 18 U.S.C. § 20, and (2) it fails to allege that defendants or their subordinates communicated a misstatement to financial institutions, as opposed to customers. (Docket # 54 at 13–14.)

As to their first argument, the indictment alleges that:

> b. Summit utilized EnerBank USA ("EnerBank") and Green Sky, Inc. ("GreenSky"), which are third parties who offer home improvement loans funded by a variety of participating financial institution lenders. The lenders who ultimately provided funds to Summit's customers are each a "financial institution" within the meaning of Title 18, United States Code, Section 20, and their deposits are insured by the Federal Deposit Insurance Corporation.

(Indictment, ¶ 2(b).) Defendants argue that the allegation that the defendants made statements to GreenSky or EnerBank, as opposed to the "financial institution" itself, is fatal to the indictment. (Docket # 54 at 14.) Defendants argue that "materiality" requires "only the tendency or capability of influencing the victim," and because the indictment fails to allege that EnerBank or GreenSky communicated these statements to their third-party "financial institution" partners, the indictment fails to allege a "materially false" representation. (*Id.* at 15, quoting *United States v. O'Brien*, 953 F.3d 449, 460 (7th Cir. 2020).)

But defendants fail to cite the complete statement from *O'Brien*. The court states that "materiality" requires "only the tendency or capability of influencing the victim; there is no requirement that the misrepresentations must have actually influenced the decision-maker or that the decision-maker in fact relied on the misrepresentations." 953 F.3d at 460. It is sufficient to say that false information regarding annual income on a loan application has the capability of influencing the financial institution. Recall too that at this stage, the government

need not demonstrate how it will satisfy the alleged elements. "A motion to dismiss is not intended to be a 'summary trial of the evidence.' Such a motion is directed only to the validity of the indictment or the information, and it tests only whether an offense has been sufficiently charged." *United States v. Yasak*, 884 F.2d 996, 1001 (7th Cir. 1989) (citation omitted). The allegation that customers provided false information regarding their annual income to ensure approval of their loan sufficiently alleges a scheme that involved a materially false or fraudulent pretense, representation, or promise.

Second, defendants argue that the indictment fails to allege that the defendants made any false statements to a financial institution. They argue that while the indictment alleges that Summit encouraged customers to misrepresent their income and drew the financing funds before the contract allowed, neither contain a "false statement." (Docket # 54 at 15–16.) Defendants further argue that the indictment stops short of alleging that the customers in fact misrepresented their income to GreenSky or EnerBank, only that Summit encouraged them to do so and that the allegations of early draws of the funds merely allege a breach of contract. (*Id.* at 16.)

I agree that the indictment could have been written more clearly. But the facts as alleged fairly inform the defendants of the nature of the charge. It is clear from the totality of the allegations that defendants are accused of encouraging applicants to misrepresent their income to GreenSky or EnerBank to ensure approval of the loan by the financial institution, and then improperly withdrawing the loan funds after the loan was approved and without completing or only partially completing the work. Whether the government can successfully prove these allegations is not at issue on a motion to dismiss. Thus, I find the indictment sufficiently alleges conspiracy to commit bank fraud.

10

Case 1:22-cr-00030-WCG    Filed 02/01/23    Page 10 of 14    Document 80

In sum, for the reasons articulated above, I recommend that the defendants' motions to dismiss be denied.

   2.   *Motion for Bill of Particulars*

Federal Rule of Criminal Procedure 7(f) authorizes the court to order the filing of a bill of particulars to fill in facts in the indictment so that the defendant can prepare an adequate defense. *See* Fed. R. Crim. P. 7(f); *United States v. Kendall*, 665 F.2d 126, 134 (7th Cir. 1981). A bill of particulars is "a more specific expression of the activities the defendant is accused of having engaged in which are illegal." *United States v. Canino*, 949 F.2d 928, 949 (7th Cir.1991). A bill of particulars is required only where the charges in the indictment are so general that they do not advise the defendant of the specific act of which he is accused. *See id.*

The test for determining whether a bill of particulars should be granted is similar to the test for determining the general sufficiency of the indictment, namely, "whether the indictment sets forth the elements of the offense charged and sufficiently apprises the defendant of the charges to enable him to prepare for trial." *United States v. Fassnacht*, 332 F.3d 440, 446 (7th Cir. 2003) (quoting *Kendall*, 665 F.2d at 134); *Canino*, 949 F.2d at 949. An indictment that includes each of the elements of the offense charged, the time and place of the accused's conduct which constituted a violation, and a citation to the statute or statutes violated is sufficient to pass this test. *Kendall*, 665 F.2d at 134. A bill of particulars is not required when a defendant can obtain the information necessary for his or her defense through "some other satisfactory form." *Fassnacht*, 332 F.3d at 447, n.2 (quoting *Canino,* 949 F.2d at 949). The Seventh Circuit has held that the government's "open file" policy is an adequate "satisfactory form" of information retrieval, making a bill of particulars unnecessary. *Canino*, 949 F.2d at 949.

Defendants move for an order requiring the government to furnish a bill of particulars, within thirty days, identifying all other persons claimed by the government to be members of the alleged conspiracy and the date each alleged member joined the conspiracy. (Mot. for Bill of Particulars, Docket # 46.) The government states that it is willing to provide the requested information but submits that sixty days is a more reasonable time frame. (Docket # 68 at 30.) Defendants agree in their reply that the sixty-day time frame is reasonable. (Def. Nathaniel R. Smith's Reply Br. in Supp. of his Pretrial Mots., Docket # 71 at 8.) As such, defendants' motions for a bill of particulars are granted.

   3.   *Motion for* Santiago *Proffer*

Statements of co-conspirators are admissible if the government convinces the court, as a preliminary matter and by a preponderance of the evidence, that (1) a conspiracy existed; (2) that the defendant and declarant were members thereof; and (3) that the proffered statements were made during the course of and in furtherance of the conspiracy. *Santiago*, 582 F.2d at 1134-35; *see also United States v. Cox*, 923 F.2d 519, 526 (7th Cir. 1994). In *Cox*, the court set forth several procedures a court could employ in making the admissibility determinations, such as requiring the government to file a proffer before trial; conducting a hearing on the matter; or in the absence of a pretrial proffer, the court may conditionally admit testimony subject to the government's eventual proof of the three foundational elements noted above. *See Cox*, 923 F.2d at 526.

It is long-standing practice in this District to conditionally admit statements of alleged co-conspirators subject to the government showing that the statements are admissible in accordance with the *Santiago* factors. *See, e.g.*, *United States v. Arms*, No. 14-CR-78, 2015 WL 3513991, *17 (E.D. Wis. June 3, 2015); *United States v. Avila-Rodriguez*, No. 10-CR-163, 2011

WL 13330770, *6 (E.D. Wis. Feb. 16, 2011) (collecting cases); *United States v. Mathis*, No. 09-CR-254, 2010 WL 1507881, *3 (E.D. Wis. Apr. 10, 2010) (same); *United States v. Kaffo*, No. 09-CR-256, 2009 WL 5197826, *2 (E.D. Wis. Dec. 22, 2009) (same). Judge Griesbach may wish to discuss this motion and his procedures for resolving the same with counsel at the final pretrial conference. For this reason, I defer entirely to Judge Griesbach on this issue.

## RECOMMENDATION AND ORDER

**NOW, THEREFORE, IT IS RECOMMENDED** that the defendants' motions to dismiss the indictment (Docket # 53, 59, 61, and 64) be **DENIED**.

**IT IS ORDERED** that the defendants' motions for a bill of particulars (Docket # 46, 58, 60, and 63) are **GRANTED**.

**IT IS FURTHER ORDERED** that defendants' motions for a *Santiago* proffer (Docket # 56 and 65) are **DEFERRED** to Judge Griesbach.

Your attention is directed to General L.R. 72(c), 28 U.S.C. § 636(b)(1)(B) and Federal Rules of Criminal Procedure 59(b), or Federal Rules of Civil Procedure 72(b) if applicable, whereby written objections to any recommendation or order herein, or part thereof, may be filed within fourteen days of the date of service of this recommendation or order. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Courtesy paper copies of any objections shall be sent directly to the chambers of the district judge assigned to the case. Failure to file a timely objection with the district court shall result in a waiver of a party's right to appeal. If no response or reply will be filed, please notify the Court in writing.

Dated at Milwaukee, Wisconsin this 1st day of February, 2023.

BY THE COURT:

_____
NANCY JOSEPH
United States Magistrate Judge