UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

      Plaintiff,

      v.                                  Case No. 22-CR-30

CHAD M. SCHAMPERS,
NATHANIEL R. SMITH,
GINA L. SCHAMPERS, and
JEFFREY M. O'BRIEN,

      Defendants.

---

## ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION FOR A *FRANKS* HEARING

---

In response to the defendants' motion to suppress the evidence seized pursuant to a search warrant in the above matter, Magistrate Judge Nancy Joseph issued a Report and Recommendation in which she determined the standing of the parties to challenge the search of their respective offices and the building as a whole. Magistrate Judge Joseph also ordered a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), to determine whether the investigating agent lied or recklessly disregarded the truth in drafting her search warrant affidavit. Dkt. No. 81. The Government has filed an objection to Magistrate Judge Joseph's Report and Recommendation on the ground that the required showing for a *Franks* hearing has not been made. For the reasons that follow, I overrule the Government's objection and adopt Magistrate Judge Joseph's thorough Report and Recommendation. To avoid unneeded repetition, I incorporate by reference Magistrate Judge Joseph's summary of the law governing search warrants and the showing required for a *Franks* hearing.

The warrant at issue authorized the search of the offices of Summit Contracting, Inc., a home remodeling contractor located in De Pere, Wisconsin, and the seizure of virtually all of the paper and electronically-stored business records of the company. Dkt. No. 51-1 at 2, 21. According to the defendants, the "all-records search warrant" was "executed on June 26, 2019—a day when Summit had planned to hold a ceremonial grand opening." Dkt. No. 52 at 1. The affidavit submitted in support of the application for the warrant was signed by FBI Special Agent Sarah Deamron. In her affidavit, Agent Deamron averred that there was "probable cause to believe that Nate Smith, Chad Schampers, John Solberg, and others, doing business as Summit Contracting, Inc. have engaged in a fraud scheme committing acts of wire fraud and bank fraud, or aiding and abetting said crimes in violation of Title 18, U.S.C., Sections 1343, 1344, and 2." Dkt. No. 51-1, ¶ 5. In support of this assertion, the affidavit recites information from two different individuals: C.L., a customer of Summit, and Whistleblower #1, a former employee of Summit.

C.L. is identified as a resident of the Eastern District of Wisconsin who signed a "Summit Protection Roofing Agreement" with a representative of Summit on April 19, 2019. Under the terms of the Agreement, C.L. was to pay $62,968 for "various improvements" to her roof and residence. C.L. applied for a loan of $65,000 through GreenSky, a company that facilitates home improvement loans funded by FDIC insured banks. *Id.* ¶¶ 9, 10. Due to her "bad credit," C.L.'s application was rejected. The affidavit states that "at the behest of a Summit Contracting, Inc. employee, C.L. was advised to use her daughter's information to obtain the loan," but "her daughter's credit was also poor and she was declined as well." *Id.* ¶ 10. "Finally," according to the affidavit, "C.L. was advised by a Summit Contracting, Inc. employee to use C.L.'s elderly mother, F.M.'s, personal information and credit history to obtain the loan." *Id.* That apparently worked, and a loan in C.L.'s mother's name was approved, "though her mother was at that time confined to a nursing home approximately 75 miles away." *Id.*

As Magistrate Judge Joseph noted in her Report and Recommendation, "the story told in the affidavit is markedly different from the story C.L. told to Agent Deamron on June 25, 2019, the same day Agent Deamron applied for the search warrant." Dkt. No. 81 at 26. The story C.L. told Agent Deamron, as reflected in her statement, was that when her initial loan application was rejected, the Summit employee merely asked if she knew anyone that could co-sign for her. C.L. first asked her daughter, and even though her daughter agreed to co-sign the loan for her, the application was again rejected because of her daughter's poor credit. At that point, C.L. asked her mother if she would co-sign. According to C.L.'s statement, her mother agreed to co-sign for the loan. Dkt. No. 51-3 at 3. In other words, contrary to the suggestion in the warrant affidavit that the Summit employee used the name and credit history of C.L.'s daughter and mother on C.L.'s loan application without their consent, both agreed to co-sign for the loan. Given this discrepancy, I agree with Magistrate Judge Joseph that the defendants have made the substantial preliminary showing that a *Franks* hearing is warranted.

The Government argues that Magistrate Judge Joseph's conclusion that Agent Deamron's affidavit may be misleading "ignores the operative statement in C.L.'s interview, which is that C.L. told law enforcement, 'I never signed any Green Sky paperwork and my mom never signed in (sic) paperwork.'" Dkt. No. 84 at 7. But if, as C.L. apparently stated to law enforcement, she agreed to the loan and her mother agreed to co-sign for it, the fact that they did not sign loan documents would suggest possible procedural irregularities, not fraud. The additional documentation submitted by the defendants does not alter this conclusion.

The Government also argues that Magistrate Judge Joseph erred in finding that the allegedly false statements or omissions were necessary for a finding of probable cause. It claims that even if the representations regarding C.L.'s GreenSky loan application are excised from Agent

3

Deamron's affidavit, the remaining information is sufficient to establish probable cause to believe that evidence of wire and bank fraud would be found in Summit's business offices. I disagree.

The Government alleges that "the gravamen of the fraud" as described in the affidavit "was that individuals were 'lured into taking out high interest home improvement loans upon false and fraudulent pretenses, representations, and/or promises.'" Dkt. No. 84 at 4. "The false and fraudulent pretenses," the Government contends, "were 'that home improvement work will be performed satisfactorily and that the full amount of funds obtained from the lender will not be converted to Summit's use without the borrower's approval and until the project is completed to the borrower's satisfaction." *Id.* But nowhere in the affidavit does it state that C.L. claimed the work on her home was not started or even completed before the funds were withdrawn; nor does it state that C.L. was not satisfied with the work.

It appears that the application for the loan was made on April 19, 2019. The affidavit states that business records obtained from Summit indicate that four days later, on April 23, 2019, Summit employees withdrew $12,593 from C.L.'s GreenSky loan account, and two days after that, on April 25, 2019, $50,374 was withdrawn, leaving a balance of $0.40. Dkt. No. 51-1, ¶ 11. But that doesn't mean that the work was not completed. According to C.L.'s statement, the roofing crew came out and put the roof on in one day about two weeks after she signed the contract. Dkt. No. 51-3 at 4. C.L. told Agent Deamron she was happy with the roof because they did it in one day and it didn't leak. *Id.* C.L. was not pleased with the replacement patio doors Summit installed and the fact that workers left extra materials lying around. That the work was not performed before the money was withdrawn or that C.L. was not completely satisfied with it, however, does not suggest she was a victim of fraud.

The other source of the information recounted by Agent Deamron in her affidavit, as noted above, was Whistleblower #1. According to the affidavit, Whistleblower # 1 worked for Summit

4

for at most two months from May 2019 through June 2019.  Dkt. No. 51-1, ¶ 8.  The defendants claim she was fired less than a month into the job.  Dkt. No. 52 at 6.  In any event, the affidavit recounts the following information received from Whistleblower #1:

> "Whistleblower # 1" reports that while working for the company "constant calls were coming in non-stop and it was obvious this was fraud."  "Whistleblower #1" continued "customers would call saying that the entire amount of money was withdrawn" from their account with GreenSky prior to the job being completed, or even started.

Dkt. No. 51-1, ¶ 13.  The affidavit went on to explain that Agent Deamron believed Whistleblower #1 "to be truthful and reliable, as many of the statements given to me were able to be verified through copies of business records obtained from Summit Contracting, Inc." and because "Whistleblower #1's initial description of the fraud perpetrated on C.L. was corroborated by C.L.'s statements."  *Id.*

I agree with Magistrate Judge Joseph's conclusion that Whistleblower #1's statements are too vague and non-specific to support a finding of probable cause.  Indeed, her statements are wholly conclusory in the sense that they are mere conclusions for which no supporting evidence is offered.  It is well established that conclusory statements do not establish probable cause.  *See Illinois v. Gates*, 462 U.S. 213, 239 (1983) ("An affidavit must provide the magistrate with a substantial basis for determining the existence of probable cause, and the wholly conclusory statement at issue in *Nathanson* failed to meet this requirement." (citing *Nathanson v. United States*, 290 U.S. 41 (1933))); *see also United States v. Koerth*, 312 F.3d 862, 867 (7th Cir. 2002) ("It is well-established that appellate courts may not uphold a warrant issued based solely on conclusory allegations.").

Neither of the two statements attributed to Whistleblower #1 offer facts that support a finding of probable cause that Summit or its employees had committed fraud.  The first—that "constant calls were coming in and it was obvious this was fraud"—offers nothing but a lay

5

person's conclusion. The second statement—"customers would call saying that the entire amount of money was withdrawn from their account with GreenSky prior to the job being completed, or even started"—likewise is insufficient. The elements of criminal fraud include the use of false or fraudulent pretenses, representations, or promises to obtain money or property of another. *United States v. Weimert*, 819 F.3d 351, 355 (7th Cir. 2016). The fact that Summit withdrew money from the loan account before completing a project may support a finding of a breach of the loan agreement, though even this is not clear. If, as with C.L.'s project, the work was performed, even if the customer is not completely satisfied, it is more suggestive of a breach of contract than fraud. As the affidavit states, "the business records of Summit Contracting, Inc. as well as the statements of C.L. indicated that the actions of Summit Contracting, Inc. and its employees were not in compliance with the terms of this agreement." Dkt. No. 51-1 at 14. But failing to comply with a contract is not fraud.

In sum, the defendants have made a sufficient preliminary showing to warrant a hearing under *Franks v. Delaware* for the Court to determine whether Agent Deamron lied or recklessly disregarded the truth in drafting her search warrant affidavit. Accordingly, the defendants' motion for a *Franks* hearing is granted, and the Clerk's Office is directed to contact the parties to schedule such a hearing before the Court in Green Bay.

**SO ORDERED** at Green Bay, Wisconsin this 19th day of April, 2023.

s/ William C. Griesbach
William C. Griesbach
United States District Judge
